KITCHENS, Justice,
Concurring in Result Only:
¶ 24. I agree that Dr. Meador’s claims are barred by the statute of limitations, and that he has not demonstrated any fraudulent concealment that would otherwise toll the limitations period. Thus, the trial court erred by denying the defendants’ motions for summary judgment. However, because I cannot fully join the majority’s analysis, and because it addresses issues that are not necessary to the disposition, I respectfully concur in result only.
¶ 25. First, clarity requires a brief discussion of the facts and procedural history *1121 of this case. In 2004, Dr. Meador sued three sets of defendants: the Trustmark defendants, the Mississippi Baptist Health Systems, Inc. (MBHS) defendants, and a third set of defendants who are not parties to this appeal.[7] Dr. Meador asserted various claims against the defendants, all arising from allegations that the defendants had conspired to deprive Dr. Meador of his medical practice.
¶ 26. Notably, the 2004 lawsuit was not the first time Dr. Meador had accused Trustmark and MBHS of conspiring to deprive him of his business. In the 1990s, Dr. Meador had acquired various loans from Trustmark in connection with his By-ram clinic. In 1996, MBHS purchased that clinic, and, according to Dr. Meador, MBHS had induced him to sell the clinic to MBHS by promising to purchase his company, Mobile Physician Services, Inc. (MPS), for an amount that would have covered his indebtedness to Trustmark. Thereafter, on September 29, 1997, Dr. Meador renewed his Trustmark debt by executing a promissory note in the amount of $230,000; but, at that time, MBHS had not yet purchased MPS.
¶ 27. On May 21, 1998, Trustmark sued Dr. Meador in the Hinds County Circuit Court, First Judicial District, seeking to collect on the $230,000 promissory note. In response, on July 15, 1999, Dr. Meador filed a setoff and counterclaims, alleging, in relevant part, that:
During early 1996 Trustmark agreed to extend a line of credit of up to $50,000.00 to Meador for the purchase and operation of a medical clinic located in Byram, Mississippi.
Based upon that loan commitment, Dr. Meador entered into an agreement to purchase and lease the facility in Byram and to operate it as a medical clinic in association with [MBHS].
During the course of purchase and operation of the clinic by Meador, Trustmark refused to loan the full amount of the line of credit which it had given to Dr. Meador. As a result, Dr. Meador’s clinic suffered serious cash flow difficulties which were a significant contributing cause of Dr. Meador’s forced sale of his clinic to [MBHS].
During the course of the purchase and operation of the Byram clinic, Trust-mark also permitted another entity, Central Medical Management, Inc.,[8] to borrow money against the credit line which it had established for Dr. Meador without the knowledge or permission of Dr. Meador.
¶ 28. On February 17, 1999, while the action between Trustmark and Meador was pending, Dr. Meador’s attorney sent a draft complaint, with a cover letter, to counsel for MBHS. The complaint and cover letter alleged, in essence, that MBHS had engaged in a scheme “to strip the Byram clinic and MPS away from Dr. Meador at salvage prices, leaving Dr. Mea- *1122 dor broke and essentially in a position of serfdom to [MBHS].” The letter went on to say “[w]e also have significant evidence that other parties, including Trustmark Bank, have colluded with [MBHS] in seeking to destroy Dr. Meador and take his business from him.” (Emphasis added.) Dr. Meador also offered, as part of a proposed settlement, to “turn over [MPS] to [MBHS].” It is undisputed that in August 1999, Meador and MBHS entered into a settlement agreement in connection with the letter of February 17, 1999, but the parties disagree over the terms of that agreement.
¶ 29. As for the case between Dr. Mea-dor and Trustmark, the trial judge granted summary judgment in favor of Trustmark on July 11, 2001. In connection with the final judgment in favor of Trustmark, the trial judge entered an eighteen-page opinion, finding that Dr. Meador had waived all defenses and counterclaims. According to the opinion, “Meador’s own testimony established] that he knew or should have known of the claims and defenses potentially available to him set forth in his Amended Counterclaim prior to executing a final renewal note.” In other words, the trial court found that Dr. Meador knew or should have known of his claims against Trustmark before September 29, 1997. Dr. Meador appealed the judgment to this Court, but the appeal was dismissed voluntarily at his request under Mississippi Rule of Appellate Procedure 42(b).
¶ 30. Returning to the present case, Trustmark and MBHS filed separate motions for summary judgment, arguing that, because the 2004 complaint was based on alleged conduct that had occurred in 1999 or before, Dr. Meador’s claims were barred by res judicata, accord and satisfaction, and the statute of limitations. In response, Dr. Meador argued that: the copy of the August 1999 release that was attached to the defendants’ motions was not authentic; the release did not extend to the claims asserted in the 2004 complaint; and that Dr. Meador had not discovered the latest cause of action until “shortly before December 2004;” thus, the statute of limitations had been tolled.
¶ 31. Following a brief hearing, the trial judge summarily denied Trustmark’s and MBHS’ motions for summary judgment, and both sets of defendants successfully petitioned this Court for interlocutory review. The two appeals were consolidated by this Court.
¶ 32. As for the merits of this appeal, Dr. Meador’s claims against Trustmark and MBHS clearly are barred by the statute of limitations. Although Dr. Meador’s affidavit vaguely referenced an ongoing conspiracy between Trustmark and MBHS that caused him harm, all of the acts alleged in his complaint refer to conduct that occurred in 1999 and before. Thus, Dr. Meador’s only defense to the defendants’ argument, that his 2004 complaint was filed outside the statute of limitations, is that Trustmark and MBHS somehow acted fraudulently to conceal his cause of action.
¶ 33. Mississippi Code Section 15-1-67 provides:
If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered.
Based on Dr. Meador’s February 17, 1999, letter to MBHS and the attached draft complaint, as well as his pleadings in response to Trustmark’s collection action, Dr. Meador knew in 1999 of the facts underlying his 2004 complaint. Despite *1123 his claim that he “first learned of the facts and circumstances pleaded in the Amended Complaint” in 2004, he had made allegations of a conspiracy between Trustmark and MBHS as early as February 17, 1999. The letter bearing that date from his attorney to MBHS plainly alleged, “[w]e also have significant evidence that other parties, including Trustmark Bank, have colluded with [MBHS] in seeking to destroy Dr. Meador and take his business from him.”[9] Dr. Meador has yet to explain how the conspiracy he referred to in 1999 is different from the conspiracy alleged in his 2004 complaint. Thus, his case against Trustmark and MBHS is barred by the statute of limitations.
¶ 34. Even with the testimony that Meador expected from Brent Farris, Dr. Meador cannot demonstrate any fraudulent activity on behalf of Trustmark and MBHS that would have prevented his discovery of the alleged conspiracy. According to Dr. Meador’s affidavit, Farris could have provided evidence that “there had been an agreement between MBHS and [Trustmark] to exert financial duress upon me in order to deprive me of my medical clinic in Byram, Mississippi and also Mobile Physician Services, a company I had organized.” However, it is apparent from his prior dealings with Trustmark and MBHS that he knew of the alleged conspiracy in 1999. While Farris’s anticipated testimony might have offered more support for his claims, Dr. Meador did not discover any new causes of action through Farris. Thus, whether the trial court erred by refusing to strike this portion of Dr. Meador’s affidavit does not affect the outcome.
¶ 35. Finally, as for Dr. Meador’s arguments regarding the release, I disagree that he is attempting to use it “as evidence of fraud.” Maj. Op. 21. Although his brief is confusing, his arguments about the authenticity of the document are in response to MBHS’ argument that the release barred any claims under the doctrine of accord and satisfaction. MBHS attempted to make this argument below, but on appeal, focuses on the statute of limitations. As with Farris’s testimony, the validity of the release does not affect the statute of limitations.
¶ 36. For the foregoing reasons, Dr. Meador’s claims against Trustmark and MBHS are barred by the statute of limitations. Because I cannot fully join the majority’s analysis of the issues, I respectfully concur in result only.
LAMAR, J„ JOINS THIS OPINION.

. The Trustmark defendants are Trustmark National Bank, Frank Hart, and Alvis Hunt. The MBHS defendants are Mississippi Baptist Health Systems, Inc., C. Gerald Cotton, Lu Harding, Charles Harrison, Eric A. McVey, III, M.D., Kurt Metzner, and James P. Wigley. The defendants who are not parties to this appeal are Central Medical Management, Inc., Jackson Medical Clinic, Inc., Jackson Medical Clinic, P.A., Jackson Medical Clinic, LLC, Premier Medical Management of Mississippi, Inc., James C. Bethea, William A. Cau-sey, M.D., and M. Kent Strum.
Unless otherwise noted in this opinion, "Trustmark” and "MBHS" refer to those entities and their individual agents/employees who were named as parties in the current lawsuit.

. According to his 2004 compliant, Central Medical Management, Inc., was "a controlled affiliate of [MBHS] and Jackson Medical Clinic.”

. Notably, in 1999, Dr. Meador was represented by the same law firm which filed the present complaint.